UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| DOMINIQUE MIDDLETON,<br><br>Plaintiff,<br><br>v.<br><br>DEPUTY PEACHTREE, SGT. STEINBURG, and DEPUTY WORD,<br><br>Defendants. | ) | No.: 1:26-CV-261-CLC-CHS |

**MEMORANDUM AND ORDER**

Plaintiff, a prisoner currently housed in the Bradley County Jail, filed (1) a complaint under 42 U.S.C. § 1983 concerning events that transpired while he was housed at the Hamilton County Jail [Doc. 1] and (2) a motion for leave to proceed *in forma pauperis* [Doc. 2]. For the reasons set forth below, the Court will grant Plaintiff's motion, dismiss Plaintiff's claims against Defendants, and permit Plaintiff an opportunity to file an amended complaint.

## I. MOTION TO PROCEED *IN FORMA PAUPERIS*

It appears from Plaintiff's motion and accompanying documents [Doc. 2] that he lacks the financial resources to pay the filing fee in a lump sum. Accordingly, pursuant to 28 U.S.C. § 1915, this motion [*Id.*] will be **GRANTED**.

Plaintiff will be **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit to the Clerk, U.S. District Court, 900 Georgia Avenue, Suite 309, Chattanooga, Tennessee 37402 twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred

fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

The Clerk will be **DIRECTED** to send a copy of this Order to the Court's financial deputy and the custodian of inmate trust accounts at Plaintiff's current facility to ensure compliance with the requirements for payment of the filing fee.

## II. SCREENING OF COMPLAINT

### A. Screening Standard

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Courts liberally construe pro se pleadings and hold them to a less stringent standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Even so, formulaic and conclusory recitations of the elements of a claim do not state a plausible claim for relief. *Iqbal*, 556 U.S. at 681. Likewise, an allegation that does not raise a plaintiff's right to relief "above the speculative level" fails to state a plausible claim. *Twombly*, 550 U.S. at 555.

To state a claim under § 1983, a plaintiff must plausibly allege that a state actor deprived him of a federal right. 42 U.S.C. § 1983.

**B. Plaintiff's Allegations**

On August 19, 2025, Plaintiff informed a sergeant and a corporal that he used to be a gang member [Doc. 1 p. 3–4]. He also disclosed that information on his intake questionnaire form [*Id.*].

On September 25, 2025, while in Unit 1 of the Hamilton County Jail, Plaintiff had a "verbal altercation" with Deputy Peachtree, who pushed Plaintiff and told him "to get away" [*Id.* at 4]. Plaintiff "came back from being pushed in [the] same spot covered and wrapped around [his] blanket" [*Id.*]. When Plaintiff came back and stood by Deputy Peachtree, Deputy Peachtree pointed his taser at Plaintiff's head and told him to go to his bunk [*Id.*].

Deputy Peachtree left the unit and then returned to Unit 1 and used the computer for approximately fifteen to twenty minutes [*Id.*]. He then told Plaintiff to pack his belongings before stating, "Nevermind[,] I'll do it[.] Come out here" [*Id.*]. "Here" was into "the bubble" [*Id.*].

While Plaintiff was in the bubble hallway of Unit 1, Deputy Word began "verbally antagonizing" Plaintiff, stating that Plaintiff was going "to the hole" [*Id.*]. Plaintiff asked Sgt. Steinburg, "Where am I going?" [*Id.* at 4–5]. Sgt. Steinburg replied, "I don[']t run the show[,] I'm just here" [*Id.* at 5].

Plaintiff was escorted in front of the hallway to G and E units, and Deputy Peachtree informed the G officers that Plaintiff was going to G1 [*Id.*]. Plaintiff told Deputy Peachtree, "I can't go in there" [*Id.*]. Deputy Peachtree stated that Plaintiff "shouldn[']t be so tough" and shook his head, not wanting to hear what Plaintiff was saying [*Id.*]. So, Plaintiff entered G1 and went to a cell on the top tier, where he remained until "after dinner" [*Id.*].

Plaintiff was "jumped" by fifteen members of the Rollin 40s gang [*Id.*]. Plaintiff was stabbed above his left eye [*Id.*]. He was "kicked and stomped[,]" lost consciousness twice, received a fractured right shoulder, and received numerous bruises and contusions [*Id.*]. Plaintiff had to receive stitches to his eye, and he has several loose teeth and back pain/stiffness as a result of the assault [*Id.*].

After the incident, Deputy Peachtree told inmate Jermaine Bonner and "another inmate" to "jump" Plaintiff, as well [*Id.* at 6].

Aggrieved, Plaintiff asks the Court to hold the Hamilton County Sheriff's Office "accountable" and award him $300 million in damages [*Id.* at 7].

## III. ANALYSIS

Plaintiff does not expressly state whether he is suing Defendants in their individual capacities, their official capacities, or in both capacities. Out of an abundance of caution, the Court will presume Plaintiff intends to seek relief against Defendants in both their official and individual capacities.

### A. Official Capacity Claims

Plaintiff's claims against the individual Defendants in their respective official capacities are actually against the entity that employs them. That is Hamilton County in this case. But Hamilton County may be liable under § 1983 only where implementation of its customs or policies caused a violation of Plaintiff's constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (providing that a municipality may be liable only where "execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury"). Plaintiff has not alleged any facts that would permit the plausible inference that he suffered constitutional injury because of a policy or custom of

Hamilton County itself, as opposed to the discrete (in)actions of individual officers. As such, Plaintiff has failed to state a claim under § 1983 against any of the Defendants in their respective official capacities, and these claims will be **DISMISSED**.

### B. Individual Capacity Claims

To state a claim against an individual Defendant in his or her individual capacity, the complaint must plausibly allege that a Defendant was personally involved in a violation of Plaintiff's constitutional rights. *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted); *Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Plaintiff does not allege any facts against Sgt. Steinburg or Deputy Word that give rise to § 1983 liability. Plaintiff's only allegation against Sgt. Steinburg is that Sgt. Steinburg did not tell Plaintiff where he was going when he left Unit 1. Such allegations do not implicate a constitutional right. Neither does Plaintiff's allegation that Deputy Word "verbally antagoniz[ed]" Plaintiff present a constitutional issue. *See, e.g., Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) (finding verbal abuse and harassment do not constitute "punishment" in the constitutional sense or otherwise raise a constitutional issue); *Faulkner v. Davidson Cty. Sheriff's Off.*, No. 3:14-MC-00740, 2014 WL 3723205, at *2 (M.D. Tenn. July 24, 2014) ("Allegations of threats and verbal abuse do not state cognizable claims under § 1983." (citing *Williams v. Gobies,* 211 F.3d 1271, 2000 WL 571936, at *1 (6th Cir. May 1, 2000))).

However, most of Plaintiff's factual allegations are levied against Deputy Peachtree. First, Plaintiff maintains that Deputy Peachtree moved Plaintiff to another unit after Plaintiff disobeyed

Deputy Peachtree's instructions following a "verbal altercation" between the two. But Plaintiff has no protected right to verbally spar with or disobey correctional staff. *See, e.g., Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (holding statements constituting "insolence" under disciplinary rules are not protected conduct); *Johnson v. Carroll*, No. 2:08-cv-1494 KJN P, 2012 WL 2069561, at *34 (E.D. Cal. June 7, 2012) (finding prisoners have no right to verbally confront officers in argumentative manner). Nor is Plaintiff protected from reasonable consequences—such as being moved to a segregated or more restrictive unit—for doing so, as Plaintiff possesses no protected liberty interest in his housing. *See, e.g., Montanye v. Haymes*, 427 U.S. 236, 242–43 (1976) (finding prisoner has "no right to remain at any particular prison facility and no justifiable expectation that he would not be transferred"); *see also McCord v. Maggio*, 910 F.2d 1248, 1250 (6th Cir. 1990) (holding prisoner housing is a matter squarely within the "broad discretion" of prison officials).

Next, Plaintiff claims that Deputy Peachtree placed him in G unit, where he was "jumped" by fifteen gang members. The governing standard for this claim arises from the Eighth Amendment's prohibition against "cruel and unusual punishment[,]" which "imposes duties" on prison officials.[1] *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Those duties require officials to "take reasonable measures to guarantee the safety of" inmates. *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. Instead, "[f]or a failure-to-protect claim to lie against a prison official,

[1] It is not clear whether Plaintiff is a convicted inmate protected by the Eighth Amendment or a pretrial detainee protected by the Fourteenth Amendment. The distinction is immaterial to the Court's analysis of Plaintiff's failure-to-protect claim, as he must meet the *Farmer* deliberate-indifference standard under either constitutional provision. *Poynter v. Shirley*, __ F.4th __, 2026 WL 2641092, at * 2–3, 16 (6th Cir. Sep. 8, 2026).

the plaintiff must show that: (1) objectively, he was incarcerated under conditions posing a substantial risk of serious harm; and (2) the official acted with deliberate indifference to inmate safety, meaning the official was subjectively aware of the risk and fail[ed] to take reasonable measures to abate it." *Reedy v. West*, 988 F.3d 907, 912 (6th Cir. 2021) (citations and quotations omitted) (alteration in original).

Plaintiff's allegations against Deputy Peachtree are insufficient to satisfy this standard. Plaintiff does not disclose any facts to indicate that he might be vulnerable to attack in the G unit, other than his statement, "I can't go in there" [Doc. 2 p. 5]. Plaintiff does not allege any facts about why he did not want to enter G unit. And even if the Court were to assume Plaintiff did not want to enter G unit because he feared violence by gang members, he does not otherwise disclose facts supporting that fear, such as whether he feared conflict with members of his former gang or from members of a rival of his former gang. In sum, the facts as pled by Plaintiff do not disclose any risk to Plaintiff.

Regardless, merely housing a prisoner with gang members does not, without more, establish that the prisoner was incarcerated under conditions posing a substantial risk of serious harm. *See, e.g., Gant v. Campbell*, 4 F. App'x 254, 256 (6th Cir. 2001) (finding "general concern" of risk of attack by gang members insufficient to state claim where plaintiff "had not received any threats prior to being transferred" and did not "identify any particular gang members whom he feared"). Instead, a prisoner must allege facts indicate that he was at a particular risk of assault, such as prior threats by identified gang members or housing the prisoner with inmates who have a history of serious assaults. *See, e.g., Schoonover v. Rogers*, No. 21-3970, 2022 WL 12258998, at 6–7 (6th Cir. Oct. 21, 2022); *Davis v. Chorak*, 624 F. Supp. 3d 870, 880–83 (W.D. Mich. 2022). Here, Plaintiff has not alleged any facts to suggest that he was particularly vulnerable to assault in G unit, and he has not alleged any facts that Deputy Peachtree was aware of a particular danger to

Plaintiff in G unit and placed him there anyway. Therefore, he has failed to state a claim against Deputy Peachtree.

A closer question is Plaintiff's allegation that, following the assault on him in G unit, Deputy Peachtree told two inmates to "jump" Plaintiff [Doc. 2 p. 6]. Such an allegation presumably satisfies the subjective component of a deliberate indifference test. However, such an allegation is insufficiently pled to meet the objective component. This is because "[i]n a failure-to-protect claim, the injury is deliberate exposure to excessive risk of serious harm." *Caraway v. CoreCivic of Tenn., LLC*, 98 F.4th 679, 685 (6th Cir. 2024). Plaintiff has not presented any facts to permit the Court to evaluate whether Deputy Peachtree's conduct exposed Plaintiff to an excessive risk of serious harm. He does not disclose, for example, whether one or more of the inmates was housed with Plaintiff or were otherwise in a position where Deputy Peachtree's alleged instruction could potentially be carried out. Accordingly, at this stage, the Court finds Plaintiff's allegations too speculative to state a claim against Defendant Peachtree.[2]

Therefore, Plaintiff has failed to state a § 1983 claim against any named Defendant. However, before dismissing this action, the Court will **PERMIT** Plaintiff an opportunity to file an amended complaint to flesh out his allegations. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) ("[A] district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA."). Accordingly, **if** Plaintiff desires to proceed with this action, he is **ORDERED** file an amended complaint within fourteen (14) days of entry of this Order that contains a short and plain statement of specific facts setting forth exactly how Defendant(s) failed to protect him, the specific party(ies) responsible, any injury(ies) he has suffered, and his request for relief. Plaintiff must avoid conclusory legal statements or arguments

[2] Plaintiff also does not disclose the factual basis for his knowledge of this conversation. Although Plaintiff does not have to explain the evidentiary basis of his allegations to state a claim, further details would assist the Court in assessing the plausibility of the claim.

in this amended complaint. Additionally, Plaintiff should specify in any amended complaint whether he was a pretrial detainee or a convicted prisoner at the time of these events. The Court will **DIRECT** the Clerk to mail Plaintiff a § 1983 form for this purpose.

The Court **NOTIFIES** Plaintiff that it will only address the merits of Plaintiff's claims that relate to his original complaint. Accordingly, Plaintiff **SHALL NOT** attempt to set forth in his amended complaint any additional claims, and he is advised that the Court will **DISMISS** any such claims. Further, the Court **NOTIFIES** Plaintiff that this amended complaint will be the sole operative complaint that the Court considers, and therefore, it **must** be complete in and of itself and must not refer to any previously filed allegations or pleadings.

If Plaintiff does not file an amended complaint by the deadline, the Court will **DISMISS** his complaint for failure to prosecute and comply with an order of the Court, and for failure to state a claim upon which relief may be granted.

## IV. CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 2] is **GRANTED**;

2. Plaintiff is **ASSESSED** the civil filing fee of $350.00;

3. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

4. Plaintiff's complaint fails to state a claim against Defendants, and they are **DISMISSED**;

5. The Clerk is **DIRECTED** to forward Plaintiff a § 1983 form;

6. Plaintiff is **ORDERED** to complete the § 1983 form within fourteen (14) days in accordance with the directives stated above **only if** he desires to further pursue this action;

7. Plaintiff is **NOTIFIED** that failure to comply with this Order will result in the dismissal of this action;

8. Plaintiff is **NOTIFIED** that the Court **WILL NOT** consider any other kind of motion for relief until after the Court has screened the amended complaint pursuant to the PLRA, which the Court will do as soon as practicable. Accordingly, the Court will automatically deny any motions filed before the Court has completed this screening; and

9. Plaintiff is **ORDERED** to immediately inform the Court of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within fourteen (14) days of any change in address may result in the dismissal of this action.

**SO ORDERED**.

**ENTER:**

**/s/________________________________**
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**